THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
KENNETH ALEXANDER, Defendant-Appellant.

First District (1st Division)   No. 80—3115

Opinion filed July 18, 1983.

Steven Clark and Martin Carlson, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Bruce A. Cardello, and Harry John Devereux, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a bench trial, the defendant, Kenneth Alexander, was convicted of rape (Ill. Rev. Stat. 1979, ch. 38, par. 11—1) and deviate sexual assault (Ill. Rev. Stat. 1979, ch. 38, par. 11—3) and sentenced to two concurrent 29-year terms. He contends on appeal that the trial court erred in precluding him from cross-examining the complainant concerning two prior allegations of rape which she made against other men. Also, he claims that the court abused its discretion in failing to order a psychiatric examination of the complainant because the evidence presented allegedly showed a compelling need for such an examination.

PRETRIAL MOTIONS

Prior to trial, the defendant filed a motion requesting the court to order a psychiatric examination of the complainant. He offered two reasons in support of the motion. First, the complainant had filed rape charges against other men on two separate occasions. The defendant argued that the improbability of a 20-year-old woman having been raped on three separate occasions, coupled with the fact that the two prior charges did not result in convictions, served to raise the question of whether her present rape accusation was the product of a psychological disorder. Second, the defendant produced the complainant's school records in an attempt to establish that she suffered from a mental or emotional condition which would affect her competency or credibility. These records, which were examined *in camera* by the court, revealed a series of incidents that ultimately led to the complainant's expulsion from a Chicago-area university.

The school records indicate that on October 11, 1979, a university security officer observed the complainant running down the street, screaming and crying. She was taken to the student health clinic. A friend of the complainant explained that the complainant was upset because she learned that on the previous Monday she had been given

drugs at a party and that a group of men and women had taken "sexual liberties" with her.

A report made by the dean of students revealed that on October 16, 1979, the dean informed complainant that the university was considering the cancellation of her registration due to the incident of October 11, as well as "various events that have occurred in the past two and a quarter years." Complainant's continued enrollment was conditioned upon her not engaging in any violent or frightening behavior; on seeing her counselor at least once a week; and at not having any private conversations with H.M., a male student who did not return her affection.

On April 28, 1980, the complainant disrupted a class when she struck a female student in the face and sprayed a substance in the face of H.M. When informed that her registration would be cancelled as a result of this incident, she began screaming and said that she would get a gun and kill H.M. and his new girlfriend. The complainant was sent to the hospital, and her mother was called to make arrangements to send her home.

In addition to the school records, defendant presented evidence that the complainant had brought rape charges against other men in the past. The first case occurred in New Mexico. In his brief before this court, defendant claims that the New Mexico case occurred three years prior to the incident at bar. The case was tried twice and each trial ended in a hung jury. The second case grew out of the October 9, 1979, incident mentioned in complainant's school records. After a preliminary hearing, there was a finding of no probable cause.

After considering both the complainant's prior allegations of rape and the information contained in her school records, the court denied the defendant's motion for a psychiatric examination.

The defendant then requested a pretrial ruling as to whether he would be allowed to cross-examine the complainant concerning her two prior rape charges in order to impeach her credibility by showing a trait on her part to make unfounded accusations of rape. The court denied the motion on the grounds that the prior rape charges were irrelevant and that evidence of this nature is barred by the Illinois rape shield statute. Ill. Rev. Stat. 1979, ch. 38, par. 115—7.

PROCEEDINGS AT TRIAL

The complainant testified that at 6 p.m. on January 3, 1980, she went to the Woodlawn Tap, where she met the defendant and another man, Larry Gause. She testified that defendant approached her and said that he knew a certain friend of hers. She joined them and re-

mained in their company until the bar closed at 2 a.m.

When the bar closed, the defendant walked the complainant home, then asked if he could use the washroom in her apartment. She agreed and he stayed for a while to smoke a cigarette. When she went to let him out, he grabbed her arm and pulled her into the bedroom. She started screaming and he choked her with his hands. Defendant performed a deviate sexual act upon complainant and raped her. When he finished, he apologized and told her to put on her pajamas. The defendant told her that he had been in prison for rape and that he had been raped by 10 men. Forty-five minutes later, the defendant again raped the complainant and performed another deviate sexual act upon her after threatening her with a pair of scissors.

The complainant testified that when the defendant got up the second time, he used her telephone, which was next to the bed, to call an emergency health care unit. She heard him say that he was having an altercation with a girl and asked if there was someone who could talk to him. He held the complainant's arms while he made the phone call. A half hour later he asked her if she remembered the phone number. She told it to him, and he again called the emergency health care unit. He hit her with the phone when she tried to scream into it, then forced her to lie down on the bed with him again.

Approximately an hour later, the defendant allowed her to use the washroom. She then started pushing him and told him to leave, and he ran out of the apartment. Shortly thereafter, at about 7 a.m., the complainant's neighbor heard her crying and knocked at her door. She told the neighbor that she had been raped, and called the police. The complainant was taken to a hospital and examined. She testified that she had marks on her neck and chin and scratches on her arm, and that she could barely see out of her right eye where the defendant poked her during their struggle.

The neighbor corroborated the complainant's testimony with respect to the injuries and the report of rape. It was stipulated that the doctor, who examined the complainant, would testify that she had a right corneal abrasion, tooth marks on her chin, and abrasions on her throat and left arm.

The defendant was arrested on January 4, 1980, in the waiting room of the Northwestern Memorial Hospital Institute of Psychiatry. A stipulation was entered that Dr. Ivanoff, a psychiatrist at the Billings Hospital Emergency Psychiatric Care Crises Center, would testify that at sometime between 5 and 6 a.m. on January 4, 1980, he received a call from a man who identified himself as Jackson. The man stated that he was having a dispute with a woman and the doc-

tor advised him to come to the hospital between 7:30 and 8 a.m. It was further stipulated that the doctor would testify that on any given night he received numerous phone calls dealing with such conflicts.

The defendant testified that he saw the complainant in the Woodlawn Tap at approximately 6 p.m. on January 3, 1980. He stated that he had met her in the bar on a prior occasion and that he asked her to join him and his friend, Larry Gause. At one point during the evening she raised her skirt a foot above her knee and asked Gause if he thought her legs were pretty.

After leaving the bar, defendant walked the complainant home, and she invited him into her apartment. She changed into a blue pajama outfit and got him some orange juice from the kitchen. After showing him the refinishing she was doing on some baseboards, they sat on the sofa and talked. Defendant testified that they listened to records, although complainant denied owning a record player.

The defendant stated that he had intercourse with the complainant once, that she consented, and that no force was involved. At one point, she told that she had had sex 10 times and that four of those were rapes. Although there was a telephone near the bed, he did not make any calls. At about 5:30 a.m., the defendant left, telling the complainant that he would see her later. Defendant testified that she did not have any scars or other marks on her when he left. Defendant then testified that he had been convicted of rape in 1974 and had been out on parole for two months.

Larry Gause, a friend of the defendant, essentially corroborated his testimony as to what occurred at the Woodlawn Tap.

The court made a specific finding that the testimony of the complaining witness "with a few minor inconsistencies *** testified in a clear and convincing manner," and that her testimony was corroborated by other witnesses. The court found that "very little, if any, credence or credibility *** can be given to Mr. Gause's testimony as adduced at the trial." The court also noted the inconsistencies between Gause's testimony and that of defendant. The court found that the State had met its burden of proving defendant guilty of rape and deviate sexual assault.

The defendant first contends that the trial court erred in prohibiting him from cross-examining the complainant concerning her two prior allegations of rape. This specific issue has not been previously considered in Illinois.

While the general rule is that a witness' credibility may not be impeached by specific acts of misconduct, many jurisdictions have made an exception where the complainant in a rape case has made prior

false allegations of rape. (*State v. Demos* (1980), 94 Wash. 2d 733, 619 P.2d 968; *Commonwealth v. Bohannon* (1978), 376 Mass. 90, 378 N.E.2d 987; *People v. Hurlburt* (1958), 166 Cal. App. 334, 333 P.2d 82; *State v. Baron* (1982), 68 N.C. App. 150, 292 S.E.2d 741; *State v. Nab* (1966), 245 Or. 454, 421 P.2d 388; Annot., 75 A.L.R.2d 508 (1961); 65 Am. Jur. 2d *Rape* sec. 87 (1972).) These courts have recognized that where the defendant contends that the accusation of rape is untrue, the fact that the complainant has made similar false accusations against other men may reveal a trait on her part to make such charges, and consequently, tend to disprove the charge before the court. In many sex offense cases, the complainant's credibility is of central importance. To prevent the defendant from fully attacking it would be to deny him the right to present a full defense and confront the witnesses against him. *Commonwealth v. Bohannon* (1978), 376 Mass. 90, 378 N.E.2d 987; *State v. Nab* (1966), 245 Or. 454, 421 P.2d 388.

Defendant contends that section 115—7 of the Code of Criminal Procedure, commonly referred to as the Illinois rape shield statute, does not prevent inquiry into prior rape complaints for the purpose of showing a pattern of similar false accusations to cast doubt upon complainant's veracity in accusing defendant. The Illinois rape shield statute provides in part:

"a. In prosecutions for rape or deviate sexual assault, the prior sexual activity or the reputation of the alleged victim is inadmissible except as evidence concerning the past sexual conduct of the alleged victim with the accused." Ill. Rev. Stat. 1979, ch. 38, par. 115—7.

Defendant relies upon *Bohannon* which held that the Massachusetts rape shield statute does not bar the type of cross-examination sought here because "the proposed questions dealt with prior accusations of rape; they in no way sought to elicit a response concerning the complainant's prior sexual activity or reputation for chastity." 376 Mass. 90, 95, 377 N.E.2d 989, 991.

The State maintains that inquiry into the prior rape allegations is barred by the rape shield statute and that even if such inquiry is permissible, the allegations in the case at bar were never proved false. We find that we need not determine whether the Illinois rape shield statute would permit, in the proper case, cross-examination on prior false accusations of rape, since it is our decision that the proffered evidence is inconclusive on the issue of the complainant's credibility and, therefore, should be excluded as irrelevant.

Defendant recognizes that although other jurisdictions have found

that prior false accusations of rape may be admitted, none have extended that rule to the situation where the prior charges were not shown to be false. The cases cited by defendant have all required that the defense show that either the complaining witness admitted the falsity of the prior charges or that they have been disproved. (*State v. Baron* (1982), 68 N.C. App. 150, 292 S.E.2d 741 (evidence allowed that 13-year-old complainant in the past had made numerous unlikely rape accusations against relatives and neighbors); *Commonwealth v. Bohannon* (1982), 385 Mass. 753, 434 N.E.2d 163 (hospital records stating that complainant made a number of "unsubstantiated and apparently false accusations of rape" were excluded as too vague and incomplete to demonstrate falsity of prior rape charges); *People v. Hurlburt* (1958), 166 Cal. App. 334, 333 P.2d 82 (complainant admitted to others that she had lied about earlier rape reports).

In a case similar to the case at bar the defendant sought to impeach the complainant with evidence that she had made two prior allegations of rape. (*State v. Demos* (1980), 94 Wash. 2d 733, 619 P.2d 968.) After an initial police report was made regarding the first incident, the complainant moved to another State and the case was placed on inactive status. The second incident was never prosecuted because of the results of a polygraph test taken by the complainant. The Washington Supreme Court refused to allow in evidence of these prior accusations, holding that they were not proved false and, therefore, were irrelevant.

■ In the present case, the prior accusations of rape were not proved false. One of the prior rape accusations terminated in a finding of no probable cause; the other culminated in two hung juries. The intrinsic veracity of the complainant's accusations should not be confused with the inability of the State to meet its burden of proof for a criminal conviction. There is nothing in the record to support the inference that these charges were unsubstantiated or to show that they were false in any manner. We note that in enacting the rape shield statute, our legislature intended to eliminate the cruel and abusive treatment of rape victims at trial by precluding the admission of irrelevant material concerning the "intimate details of their past sexual activity." (*People v. Cornes* (1980), 80 Ill. App. 3d 166, 175, 399 N.E.2d 1346, 1353.) A policy of excluding irrelevant material which potentially may be introduced to harrass a complaining witness in a rape case supports the trial court's decision to prohibit introduction of this evidence. The trial court did not err in ruling that evidence of prior rape complaints by the victim are inadmissible where defendant was unable to show that the prior complaints were unfounded.

Defendant next contends that the trial court erred in denying defendant's motion for a psychiatric examination of the complaining witness to ascertain if she had a mental or emotional condition that would effect her competency or credibility. Initially, in support of his motion defendant presented evidence of the two prior rape charges. Two separate trial judges denied defendant's motion. Defendant then subpoenaed the complainant's school records. After an *in camera* inspection of these records, the trial court again declined to order a psychiatric examination.

■■ It is established that a trial court, in exercise of its discretion, may order the psychiatric examination of the complaining witness in a sex offense case when the defendant presents a compelling reason therefor (*People v. Glover* (1971), 49 Ill. 2d 78, 273 N.E.2d 367). We have reviewed the record of this case and the complainant's school reports and are unable to say that the able trial court, in denying the motion, abused its discretion.

Accordingly, for the reasons stated herein, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McGLOON and GOLDBERG, JJ., concur.