THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CLINTON GILLESPIE, Defendant-Appellant.

First District (1st Division)   No. 1—93—3064

Opinion filed November 20, 1995.

Michael J. Pelletier and Linda Eigner, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and William L. Toffenetti, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:

The indictment against Clinton Gillespie contained three counts. The first two charged the defendant with intentional homicide of an unborn child. The third charged him with aggravated battery. In a bench trial, he was convicted of all three charges. He was sentenced to 30 years' imprisonment on the first count. The other counts merged with count I.

We find the State failed to prove an essential element of the charge of intentional homicide of an unborn fetus. For that reason, the convictions on that charge will be reversed. We affirm the conviction for aggravated battery and remand the case to the trial court for resentencing.

BACKGROUND

On May 24, 1990, Chicago police officer Thomas Burg responded to a call. He drove to Tracy Cook's apartment at 3054 East Cheltenham Place. When Officer Burg arrived, he saw Cook walk to his police car, taking "baby steps." He noted she was bent over and clutching her stomach. She was grimacing in pain and sobbing. He helped her to the car, then drove her to the emergency room at South Shore Hospital.

At the hospital, Cook was given an ultrasound to determine the status of the child she had been carrying. Dr. Chang Bock Rhee, a diagnostic radiologist, observed the results of the ultrasound test. It revealed a normally developed fetus with a gestational age of 27.6 weeks, by head measurement. No heartbeat could be detected.

Cook was transferred to South Chicago Hospital, where she was attended by Dr. Kennedy. Dr. Kennedy examined Cook and noted that she had several external abrasions on her neck, thorax, and lower abdomen. Cook told him that her boyfriend had beaten her and that she had been kicked in the abdomen at least four times. Based on this patient information and the results of the ultrasound done at South Shore Hospital, Dr. Kennedy's diagnosis was fetal demise due to trauma. He ordered that labor be induced. At 6:57 p.m. on May 25, 1990, Cook delivered a stillborn female fetus.

The fetus showed no apparent pathology. Cause of death was not readily determinable, although Dr. Kennedy hypothesized that death was due to trauma which caused the placenta to dislodge. Cook signed papers agreeing to have an autopsy performed on the fetus.

On June 6, 1990, Gillespie was arrested. On June 7, 1990, Cook appeared before the grand jury.

On June 26, 1990, the grand jury returned an indictment against Gillespie, charging him with two counts of intentional homicide of an unborn fetus and one count of aggravated battery.

Trial was set to begin on February 22, 1993. Cook failed to appear. On February 23, 1993, the court issued a warrant for her arrest. On February 24, 1993, Cook appeared in court, represented by an attorney. She admitted that she had testified before the grand jury, had signed a sworn complaint against Gillespie, and had given a signed statement to police. Now, however, she stated that it was her intention to refuse to testify in exercise of her fifth amendment right.

The court held a hearing to determine whether there was a proper basis for Cook to exercise her fifth amendment right. Finding no valid basis, the court directed Cook to testify or be found in contempt of court.

A bench trial began. Testimony was taken from Dr. Rhee, Dr. Kennedy, and Officer Burg. They related the events as stated above. In addition, Dr. Wadi Bardawil, the chief of surgical pathology at Hoffman Estates Medical Center, was called on to render an opinion as to the cause of death of the fetus. Bardawil, who specializes in obstetrical and gynecological pathology, reviewed Cook's medical reports, the reports of the autopsy, as well as slides and photographs of the placenta and umbilical cord. He testified that the slides and photos showed hemorrhaging within the placenta, consistent with trauma to the mother. He further noted that the autopsy of the fetus showed that it was developmentally normal and without disease. The early stages of decomposition could be detected, indicating that the fetus had been dead for less than 48 hours.

When Tracy Cook was called on to testify, she was unwilling. She admitted that she had known Gillespie for seven years and that he was the father of her son, Avery. She neither confirmed nor denied that Gillespie was the father of the child that was born stillborn on May 25, 1990. Instead, on cross-examination she testified that, prior to May 24, 1990, she had broken up with Gillespie and had been seeing other men.

When asked how far into her pregnancy she was on May 24, 1990, Cook stated that she could not remember but she thought it was only five months. She then portrayed a different picture of the events on May 24, 1990.

She testified that she woke up feeling sick that morning. When Gillespie arrived at her apartment, she was angry with him and slammed the door in his face. Gillespie then kicked the door in and she was struck by the door in "the vaginal area." She implied that her actions had provoked Gillespie into kicking the door and that the door accidently hit her.

Cook further testified that she grabbed a brass watering can (used

to water plants) and hit Gillespie with it. Gillespie, in turn, pushed her, she fell against a radiator, lost her balance, and fell. Cook admitted that Gillespie kicked her in the legs as she lay on the ground. Cook added, however, that she kept trying to kick him back. When asked why she hit him, she replied that she didn't know, it was "instinct."

The rest of her testimony added little. She admitted that she called the police and was taken to the hospital. Beyond that, she could remember very little. She did not remember any of the questions asked or answers given at the grand jury, even when they were read back to her at trial. She did not remember having an ultrasound performed at the hospital or speaking with Dr. Kennedy.

Because of Cook's trial testimony, Assistant State's Attorney Allison Perona was called to testify to the circumstances surrounding Cook's grand jury testimony.

Perona read Cook's grand jury testimony into the record. It was received as substantive evidence. See 725 ILCS 5/115—10.1 (West 1992).

The substance of Cook's grand jury testimony:

On May 24, 1990, she was seven months pregnant. She was not married. She lived at 3054 East Cheltenham Place with her two-year-old son, Avery. Clinton Gillespie was Avery's father and the father of the child she was carrying.

At 7 o'clock that morning, Cook woke up. She could feel the baby moving inside her. At about 9 o'clock that morning, Gillespie came to Cook's apartment. He was angry with Cook because she had told his mother he was not working. In addition, he was supposed to give her some money to cover a check she had written for a car. She told him she was going to call the dealer and stop payment on the check.

They argued. She was standing at the door of her apartment. Gillespie stood in the hallway outside the apartment. Gillespie became extremely angry. He kicked her in the stomach, in the area where she was carrying the baby. As Cook doubled over, Gillespie pushed her into the apartment and locked the door. Cook screamed and tried to get out of the apartment. Gillespie grabbed Cook by the neck and shoved her toward the bedroom. He beat her about the head and back and then pushed her against the radiator. Cook fell, but Gillespie continued the assault. As Cook lay on the floor, Gillespie kicked her in the head, neck, and back, and "stomped on" her body. She did not remember if he again hit her in the stomach.

Cook did not know how long the beating took. When it was over, Gillespie said: "That's for screaming." He walked out. Cook got up and made her way to a pay phone. She called the police.

For his defense, Gillespie presented the testimony of Dr. Lifschultz, a forensic pathologist at the Cook County medical examiner's office. In his opinion, the cause of death to the fetus was "intrauterine asphyxia due to an undetermined etiology." He also said that trauma to the mother could have accounted for the death of the fetus.

Closing arguments and the finding of guilty followed.

## DECISION

Until 1986, the feticide statute required that the accused "knew, *or reasonably should have known under all of the circumstances*, that the mother was pregnant." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 38, par. 9—1.1(a)(4).) The current statute, the one used in this case, renames the offense to "intentional homicide of an unborn child." It changes the knowledge requirement to: "(3) he knew that the woman was pregnant." 720 ILCS 5/9—1.2 (West 1994).

The defendant's knowledge of pregnancy is an essential element of the offense. The change in the statute reflects legislative concern that something less than actual knowledge would be used to convict someone of this serious crime.

Knowledge is ordinarily proved by circumstantial evidence, rather than by direct proof, but the State "must present sufficient evidence from which an inference of knowledge can be made, as the inference must be based on established facts and not pyramided on an intervening inference." *People v. Pinta* (1991), 210 Ill. App. 3d 1071, 1078, 569 N.E.2d 1255; *People v. Quiver* (1990), 205 Ill. App. 3d 1067, 1071, 563 N.E.2d 991.

Knowledge, when an essential element, cannot be based on "conjecture and speculation." *People v. Davis* (1977), 50 Ill. App. 3d 163, 169, 365 N.E.2d 1135.

■ This case is marked by questions not asked and proof not made. There is no evidence of the size or weight of Tracy Cook at any relevant time. No one said her pregnant condition could be observed. She never was asked, at the grand jury or at trial, whether she was showing. She did not say anywhere that she had told Gillespie she was pregnant. The two did not live together. There was no evidence they were engaged in any kind of ongoing sexual relationship. While Gillespie expressed great anger on the day of attack, he said nothing that would indicate knowledge of Tracy Cook's pregnancy.

In short, there is a failure of proof.

We recognize that the finding of a trial court in a nonjury case is entitled to great weight because the court is able to observe the witnesses, judge their credibility, and determine the weight to be ac-

corded their testimony. *People v. Griffin* (1967), 88 Ill. App. 2d 28, 30, 232 N.E.2d 216.

We do not second-guess the credibility judgments made by the trial court. Nor do we attempt to resolve conflicts in the testimony any differently than did the trial court. Taking the State's evidence in its most favorable light, we do not see how it can be said the defendant's knowledge of Cook's pregnancy was proved beyond a reasonable doubt.

The State relies on the fact that the first blow defendant struck was to Cook's lower abdomen. That was one of many blows, to different parts of her body. Inferring knowledge of pregnancy from that fact requires a leap of faith we are unwilling to take. That is not a reasonable inference. That is speculation and conjecture.

We therefore reverse the two convictions for intentional homicide of an unborn child.

Because our conclusion about counts I and II does not reach the aggravated battery charge, we consider the remaining issue raised by the defendant. He contends the trial court failed to examine a possible claim of ineffective assistance of counsel.

In his post-trial motion for new trial, defense counsel asked to bring before the court "newly discovered evidence," which, he said, would raise a reasonable doubt as to defendant's knowledge of Tracy Cook's pregnancy. This "newly discovered evidence" consisted of two affidavits and the post-mortem report. One of the affiants was Tracy Cook, who averred that she had never told Gillespie that she was pregnant. The other affiant was Dorothy Davis, Cook's day care provider, who averred that Cook had not appeared pregnant and that she had been unaware of Cook's pregnancy, though she saw her almost daily during May 1990. The post-mortem was offered to show that the fetus had been $2^1/2$ pounds when delivered.

This information, defense counsel said, had been unavailable to him until after trial. He did not explain. The trial court denied the motion for new trial, finding the information could have been discovered prior to trial.

On appeal, Gillespie does not challenge the trial court's ruling that the evidence was not "newly discovered." In fact, he agrees with it. He contends, instead, that his attorney's attempt to have this evidence admitted during post-trial proceedings should have alerted the trial court to the possibility that his attorney had neglected the case. For that reason, he says, the trial court should have, *sua sponte*, conducted an inquiry into the possibility of ineffective assistance of trial counsel and, if necessary, appointed new counsel to argue the point to the court. This, Gillespie says, is required by the decisions in *People v. Krankel* (1984), 102 Ill. 2d 181, 464 N.E.2d 1045, and *People v. Jackson* (1985), 131 Ill. App. 3d 128, 474 N.E.2d 466.

In *Krankel* our supreme court held that the defendant should have been appointed counsel, other than his originally appointed counsel, to represent him at a post-trial hearing after he alleged, in a *pro se* motion for new trial, that he had received ineffective assistance of counsel because his trial counsel failed to present an alibi defense. The case was remanded for a new hearing on defendant's assertion of ineffective assistance.

In *Jackson* defendant wrote a letter to the judge before post-trial proceedings, complaining about his retained counsel's failure to call a certain witness. On review, the court held that the trial court has the responsibility to examine the factual matters underlying the claim of ineffectiveness to determine whether possible neglect of the case was indicated or whether the attorney's actions could be regarded as a matter of trial strategy. In that case, the trial court questioned trial counsel and learned that a valid reason existed for not calling the witness. The reviewing court concluded that there was no error in refusing to appoint new counsel to argue defendant's claim of ineffective assistance.

Recently, in *People v. Johnson* (1994), 159 Ill. 2d 97, 636 N.E.2d 485, the supreme court clarified the *Krankel* decision. The *Johnson* court held that a "review of *Krankel* and its progeny leads us to conclude that the operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the *pro se* defendant's allegations of ineffective assistance of counsel." *Johnson*, 159 Ill. 2d at 125.

In the present case, Gillespie never notified the trial court, by motion, letter, or other means, that he was dissatisfied with the representation he had received. Now, on appeal, Gillespie asks this court to find that, under *Krankel*, trial courts have the obligation to initiate an inquiry into defense counsel's competence whenever defense counsel's conduct shows some evidence that he or she neglected the case. *Krankel* should not be read so broadly.

*Krankel* provides a defendant with an opportunity to have a fair hearing on his or her claim of ineffective assistance of counsel. *Krankel* holds that when such a claim is raised at the trial level, it is incumbent on the trial judge to fairly examine the factual matters which are the basis for the claim of ineffective assistance of counsel. If there appears to be some substance to the claim, defendant should be provided counsel, other than trial counsel, to assist him in presenting the claim.

The main concern is that a reviewing court have sufficient information to assess trial counsel's performance, so that it can determine whether defendant received a fair trial or is entitled to a new one. Pur-

suant to *Krankel*, if a reviewing court finds that the trial court's consideration of the effectiveness issue is insufficient, it must remand the matter for further hearing. Nothing in *Krankel* suggests that if the issue is not raised before the trial court a duty should be placed on the trial court to raise the issue of ineffectiveness of counsel *sua sponte.*

In *People v. Lewis* (1988), 165 Ill. App. 3d 97, 518 N.E.2d 741, the reviewing court ruled that there was no duty on the part of the trial court to raise the issue of trial counsel's competency *sua sponte* or appoint separate counsel to argue the issue of ineffective assistance, even though defendant had written letters of complaint to the court. The defendant's failure to address the subject in open court operated as a waiver of the issue, the reviewing court said. The *Lewis* court, however, reviewed defendant's claim of ineffective assistance of counsel on appeal, finding that the record supplied sufficient basis for negating the claim.

Gillespie relies on *People v. Williams* (1992), 224 Ill. App. 3d 517, 586 N.E.2d 770, as support for his proposition that a trial court has the duty to act *sua sponte.*

*Williams* bears some similarities to the case at bar. In *Williams,* defense counsel brought in two witnesses at the hearing on his post-trial motion for new trial. These witnesses gave testimony that was exculpatory for the defendant. The trial court, after hearing the evidence, ruled that it was not "newly discovered" and denied the motion for new trial. On appeal, this court remanded the case, saying:

> "Where there is a clear basis for an allegation of ineffectiveness of counsel, a defendant's failure in explicitly making such an allegation does not result in a waiver of a *Krankel* problem. *** Fundamental fairness requires a further investigation of counsel's performance." 224 Ill. App. 3d at 524.

*Williams* holds that when a defendant does not raise the issue of ineffectiveness of counsel in a post-trial motion for new trial, and the record reveals strong evidence that counsel had acted incompetently, fundamental fairness demands that defendant be given the opportunity to present the issue to the trial court. A *Krankel*-type investigatory hearing on the issue of ineffective assistance of counsel then should be conducted by the trial court. If the trial court's investigation of the factual matters underlying the claim of ineffective assistance shows that the claim has some merit, defendant should be entitled to a full hearing on the issue, with counsel to represent him. Then, if the trial court denies the motion for new trial, defendant can obtain a meaningful review of the decision.

Ordinarily, a trial court should not be placed in a position of having to "second-guess" defense counsel strategy. This is especially true when counsel is privately retained.

In *People v. Pecoraro* (1991), 144 Ill. 2d 1, 578 N.E.2d 942, and *People v. Miles* (1988), 176 Ill. App. 3d 758, 531 N.E.2d 891, the reviewing courts stated that it would be outside the "rubric of authority" of a trial court to "advise or exercise any influence or control over the selection of counsel by defendant, who was able to, and did, choose counsel on his own accord." (*Pecoraro*, 144 Ill. 2d at 15; *Miles*, 176 Ill. App. 3d at 772.) In these cases the courts were called upon to decide whether the defendant was entitled to a hearing and appointment of new counsel after *pro se* claims of ineffective assistance of counsel were raised in the trial court. In both instances the reviewing court found that the trial court adequately addressed the claims of ineffective assistance of counsel and that the record did not reflect a basis for the claims of incompetence.

■ In the present case defendant does not raise, as a separate issue on appeal, the issue of ineffective assistance of counsel. The contention, however, is implicit in his claim that the trial court erred by not addressing the issue of his attorney's competence *sua sponte*. But the record in this case does not provide "a clear basis for an allegation of ineffectiveness of counsel." *Williams*, 224 Ill. App. 3d at 524.

Errors in judgment or matters of trial strategy do not establish incompetence " 'even if clearly wrong in retrospect.' " (*People v. Palmer* (1994), 162 Ill. 2d 465, 479-80, 643 N.E.2d 797, quoting *United States v. Yancey* (7th Cir. 1987), 827 F.2d 83, 90.) The record reveals that trial counsel followed a sound trial strategy—he relied on the State's inability to prove its case. When that strategy failed, counsel attempted to bring in additional evidence to support his theory that Gillespie did not have the required mental state. The fact that counsel's trial strategy was unsuccessful does not support a claim of ineffective assistance of counsel.

Because the record does not reflect a "clear basis" to conclude that Gillespie received ineffective assistance of counsel, there was no reason why the trial court should have been alerted to such a claim.

CONCLUSION

For the reasons stated above, the defendant's convictions for intentional homicide of an unborn child are reversed. His conviction for aggravated battery is affirmed. The case is remanded to the trial court for sentencing on the aggravated battery charge.

Reversed in part, affirmed in part and remanded.

CAMPBELL, P.J., and BUCKLEY, J., concur.