THIRD DIVISION

March 12, 2003

No. 1-01-0643

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the 

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. )               

)

ROBERT DAVIS,   ) Honorable

) Thomas R. Sumner,

Defendant-Appellant. ) Judge Presiding.

JUSTICE WOLFSON delivered the opinion of the court: Following a bench trial, defendant Robert Davis was convicted of six counts of aggravated criminal sexual assault, one count of aggravated kidnaping, one count of aggravated battery, one count of armed violence, and one count of unlawful restraint.  He was sentenced to 54 years' imprisonment.  

On appeal, defendant contends: (1) the trial court erred in applying the Illinois "rape shield" statute to preclude defense counsel from cross-examining the victim about a previous sexual assault complaint; (2) he was not proven guilty beyond a reasonable doubt; (3) the trial court erred in failing to investigate 
sua
 
sponte
 defense counsel's alleged neglect and incompetence; and (4) the trial court erred in allowing a witness to testify to hearsay statements made by the victim to medical personnel.  We affirm. 

FACTS

Before trial, defense counsel made a motion 
in
 
limine
, asking the court for permission to cross-examine the victim, Lakita H., about a prior sexual assault complaint on September 5, 1998.  Defense counsel argued the fact pattern in the prior incident was similar to the instant case and took place exactly one month before.  In the September 5 incident, Lakita alleged that she met two men.  She had a discussion with one of the men and later met the other man.  They went to a residence and had drinks.  Lakita left the residence.  When she returned, she was sexually assaulted by one of the men.  Lakita went to the hospital and participated in the completion of a Vitullo kit.  The police aggressively pursued the matter until March 1999.   The police then closed the case because their attempts to contact Lakita at her address were unsuccessful.   

Defense counsel contended the prior incident was relevant because it showed a lack of credibility and a prior fabrication by Lakita.  The State responded that the facts were not similar, and the rape shield statute prevented the defense from questioning Lakita about the prior incident.  The court denied defendant's motion, holding the rape shield statute applied to preclude defense counsel from questioning Lakita about the prior incident.

At trial, Lakita testified on October 4, 1998, she had finished her work as a tow-truck driver at about 6:30 or 7 p.m.   On her way home she stopped to buy chicken, then went to a liquor store at 51st Street and Michigan Avenue to buy beer.  As she was walking into the store, a man approached and tried to speak to her, but she ignored him.  The man was light-skinned and had braids in his hair; Lakita identified him as defendant.  When she left the store, defendant tried to speak to her again, but she ignored him and drove home.

At about 8 p.m. that evening, Lakita returned to the same store to buy cigarettes.  When she left the store, she saw defendant and co-defendant James Walker.  They approached her and said something about going to a party with them.  She ignored them and drove home in her tow truck.  She parked across the street from her building, turned off the radios and secured her money in a steel folder in the truck.  As she was locking the truck, both defendants approached her.  Defendant poked her in her side with an object she believed to be a gun and said they were going to a party.  Walker said "come on" and grabbed her arm.  They walked through a construction site, and defendant shook a bag containing urine onto her. 

The defendants pulled Lakita's hood down over her face and tied it tightly.  They then crossed the street and went into a building.  She could hear defendants talking to other males.  Defendants pushed her into an elevator, and they went up.  They shoved her into an abandoned apartment and pushed her onto a mattress in a bedroom.  Defendant told Lakita it was Walker's birthday, and Lakita was his birthday gift.  Lakita tried to stand up a couple of times, but defendants shoved her back down.  Throughout the night, both defendants and a third man repeatedly sexually assaulted her--orally, rectally, and vaginally.  They also beat her with a baseball bat and their fists and submerged her body in scalding water.  At one point, she got up and tried to jump out the window, but she realized they were on a high floor of the building. 

After a period of time, Lakita lost track of who was doing what to her, and she "blacked in and out."  She heard them say she was dead.  Defendants talked about wrapping her body in carpet and putting it on the railroad tracks or throwing it down the incinerator.  One of the defendants kicked her and she moved.  She started pleading with them to let her go and told them she would not tell anyone.  Defendants threw Lakita's clothes at her and said she had two minutes to get dressed or they would throw her out the window.  She got dressed and they put the hood over her head again.  As they were leaving, she was able to see the apartment number on the door was "15 something."  

When Lakita went outside, she realized for the first time it was daylight, the next morning.  Defendants threatened to kill her if she told anyone about the incident.  She started to walk home but realized she was being followed by another, unidentified, man.  She saw her neighbor and told him to call the police.  J.B. Brown, Lakita's co-worker, was sitting in his tow truck behind her truck.  She told him a man was following her.  Lakita got into her truck, and she and J.B. started driving around to look for the man.  Lakita called the police and other tow truck drivers on her truck radio.  She then spotted defendants walking on 49th Street.  At 51st Street, she backed into a car to get the attention of the police.  Several police cars and tow trucks came to the scene, and Lakita was put in an ambulance.  She saw defendants through the window, and she became scared and screamed.  

On cross-examination, Lakita testified defendants offered her drugs at the apartment, but she refused.  She did not know what kind of drugs they were.  Defendants also offered her alcohol, and she drank it.  She denied using illegal drugs before the incident but said she takes several prescription drugs.  She did not remember telling the detectives after the incident that she left her house for the store at 12:15 or 12:45 a.m.  Lakita testified she was very hysterical at the hospital and did not remember what she told anyone.  She remembered a condom was used at one time during the incident.    

Regina Mathews, a registered nurse, testified she worked in the emergency room at Provident Hospital on October 5, 1998.  She assessed Lakita, who told her she had been raped.  She noticed Lakita had swelling on her face, and bruising and swelling on her shoulder, arm, hand, thigh, and hip.  She described them as large areas of redness, swelling, and welts.  Lakita started moaning every time she moved.  

Lakita told Mathews she had gone out to get cigarettes that night and was approached by a light-skinned man who followed her back to her residence without her knowledge.  When she got out of her truck, she saw the man with a dark-skinned man.  The dark-skinned man got forceful and told her they were going somewhere, and she followed.  He had a hand in his pocket, and she wasn't sure if he had a weapon.  They took her to a project building and went up in an elevator to a vacant apartment.  There was a third person there.  They asked her if she wanted to do drugs, and she refused.  She smoked a cigarette that was offered to her.  

Lakita told Mathews the men grabbed her and started pulling her clothes off.  All three individuals began sexually penetrating her with their penises--vaginally, orally, and rectally.  They took her to the bathroom, and the same acts occurred there.  She tried to escape, and she was beaten all over with fists and a bat.  She was repeatedly sexually assaulted.  She drank some alcoholic beverages.  The offenders eventually let her go at about 8 a.m. the next morning.  Lakita notified her neighbor who called the police.  

Mathews conducted a rape kit test on Lakita, and a doctor  performed a vaginal and rectal exam.  Mathews sealed the rape kit, which remained in her presence until she gave it to police.  Lakita told Mathews she was not sure if the men used condoms.  She indicated she had smoked marijuana in the past.  Lakita also told her she had left her home to go to the store around midnight.  

Chicago police officer Lisa Locke testified that on October 5, 1998, at approximately 8:40 a.m., she was on patrol and received a flash message indicating an assault and a person being followed.  She went to 51st Street and King Drive and saw Lakita in a tow truck.  According to Officer Locke, Lakita was "hysterical," "screaming," and "crying."  She was saying, "'I caused an accident to alert the police to get the police to the scene.'"  After receiving information from other officers, Officer Locke proceeded to 4950 South State Street, Apartment 1504, with Officer John Gregwar.  She recovered a baseball bat behind the bedroom door and five condoms inside a garbage bag.  The items were inventoried. 

Officer Vickie Dodd testified she spoke with Lakita in the ambulance.  According to Officer Dodd, Lakita was "very hysterical" and "trembling" and "was blurting out she had been raped."  When Lakita saw the two offenders through the window, she started yelling and screaming and said "that is them."  In her general offense case report, Officer Dodd indicated Lakita had been drinking.  She recorded the time of the offense as from 12:30 a.m. until 8:00 a.m.  

Charles Neal, Lakita's boss at the time of the incident, testified he received a communication from Lakita on his truck radio on October 5, 1998.  She sounded distraught and panicked, and it took him a while to figure out her location.  When Neal arrived at 51st Street and King Drive, Lakita was very distraught and distressed.  Her face was swollen, and she was crying.  Her clothes were partially ripped, her face wet and bloody. 

Several stipulations were entered into evidence by the State.  An examination of the baseball bat revealed no latent fingerprint impressions suitable for comparison.  The vaginal swabs and rectal swabs from the Vitullo kit, and the five condoms, were found to contain semen.  Sperm and non-sperm fractions from the victim and both defendants were found on the inside and outside of the condoms.  Defendant's DNA and the victim's DNA were both present on portions of two of the condoms.   Following the evidence presented, the court found defendant guilty of aggravated criminal sexual assault, aggravated kidnaping, armed violence, aggravated battery, and unlawful restraint.  

Defendant's motion for new trial was denied.  He was sentenced to nine years on each of six counts of aggravated criminal sexual assault, to be served consecutively.   He was sentenced to six years for aggravated kidnaping, nine years for armed violence, five years for aggravated battery, and three years for unlawful restraint, to be served concurrently with the aggravated criminal sexual assault counts.  Defendant's motion  to reconsider sentence was denied.         

DECISION

I. Rape Shield

According to defendant, one month prior to the incident in the instant case, Lakita complained to police that she had been sexually assaulted by another man.  During their follow-up investigation, police were unable to contact Lakita at her home address.  Defendant contended he should have been allowed to cross-examine Lakita about the prior incident to show a prior false claim of sexual assault.  During argument before the court, defense counsel contended:

"We feel the case at bar is strikingly similar, it is a month to the day from this alleged assault, Judge, and we feel that what we have is a situation where a person with facts which are those where she meets people on the street, engages in social behavior with these people, engages in sex with these people and then cries rape goes to show credibility or lack of credibility as to the complaining witness." 

Defense counsel alluded to hospital records and a police report related to the prior incident.  Defendant argued based on the fact that police were unable to follow up on the investigation with the victim, he had made a "good faith prima facie basis of showing a possible fabrication."

Counsel for the State responded the prior incident was factually dissimilar to the instant case and was irrelevant.  According to the State, Lakita knew one of the men involved in the prior incident, whereas the instant case involved a sexual assault committed by strangers.    

The trial court denied defendant's request, holding the rape shield statute barred defendant from entering into this line of questioning.

Under the "rape shield" statute, the prior sexual activity or reputation of the alleged victim or corroborating witness in a sexual assault case is inadmissible, except (1) as evidence concerning the past sexual conduct between the alleged victim and the accused, when offered to show consent, or (2) when "constitutionally required to be admitted."  725 ILCS 5/115-7(a) (West 2000).  

Here, there was no evidence of any past sexual activity between the alleged victim and defendant, so the first exception does not apply.  Defendant contends that evidence of a prior false accusation of rape is a recognized exception to the rape shield statute, where there exists a substantial offer of proof.  He contends the evidence in this case is relevant to the victim's "prior pattern of behavior" and credibility.  In addition, the evidence is beyond the scope of the statute, because the circumstances surrounding the previous incident do not constitute "prior sexual activity."

A defendant has a right, pursuant to the confrontation clause in the Sixth Amendment, to cross-examine a witness in order to show motive or bias or other factors which might influence testimony.  
Olden v. Kentucky
, 488 U.S. 227, 231, 102 L. Ed. 2d 513, 109 S. Ct. 480 (1980); 
People v. Sandoval
, 135 Ill. 2d 159, 173, 552 N.E.2d 726 (1990); 
People v. Gorney
, 107 Ill. 2d 53, 59, 481 N.E.2d 673 (1985).  The scope of cross-examination and the admissibility of evidence are within the discretion of the trial court, and we will not disturb its ruling on review absent a clear showing of abuse of discretion.  
Gorney
, 107 Ill. 2d at 59.  A trial court may exclude evidence when its relevancy is so speculative that it is of little probative value.  
Gorney
, 107 Ill. 2d at 60.   

Under the second exception, in 
Sandoval
, 135 Ill. 2d at 175, the Illinois Supreme Court recognized that a defendant's constitutional right to confront witnesses must, in certain instances, supercede the statutory exclusion.  
People v. Darby
, 302 Ill. App. 3d 866, 874, 706 N.E.2d 1050 (1999).  Following the decision in 
Sandoval
, the rape shield statute was amended to provide for admission of evidence of prior sexual activity or reputation "when constitutionally required to be admitted."  
Darby
, 302 Ill. App. 3d at 874.  A defendant's constitutional right to cross-examine a witness is not defeated by the statute where the evidence of a victim's past sexual conduct is relevant and tends to establish bias, motive, or prejudice.  
Sandoval
, 135 Ill. 2d at 174-75.     

We have held prior false accusations of sexual assault do not constitute "prior sexual activity" under the rape shield statute.  
People v. Grano
, 286 Ill. App. 3d 278, 288, 676 N.E.2d 248 (1996); 
Redmond v. Kingston
, 240 F.3d 590, 592 (7th Cir. 2001).  In 
Grano
, the court held the statute was not designed to preclude the admission of all evidence related to sex; the legislature intended to exclude only the actual sexual history of the complainant, not prior false accusations.  
Grano
, 286 Ill. App. 3d at 288.  "Language or conversation does not constitute sexual activity."  
Grano
, 286 Ill. App. 3d at 288.  In 
Grano
, the court reversed the defendant's conviction, finding he should have been allowed to impeach the victim with prior false allegations of sexual activity.  
Grano
, 286 Ill. App. 3d at 287-88.  See also 
People v. Santos
, 333 Ill. App. 3d 1, 9, 774 N.E.2d 473 (2002) (prior sexual activity not precluded by rape shield act where offered to impeach complainant's credibility on a material issue). 

In contrast to this case, the defendant in 
Grano
 presented the court with specific evidence of the falsity of the allegations.  He advised the court that three witnesses would testify the victim told them she had sex with three other adult men, and three witnesses (the other adult men) would testify they never had sex with the victim.  
Grano
, 286 Ill. App. 3d at 287-88.  

In 
People v. Alexander
, 116 Ill. App. 3d 855, 861, 452 N.E.2d 591 (1983), a case factually similar to this one, this court held the evidence of the victim's two prior rape charges  was correctly excluded.  The complaining witness did not admit the falsity of the prior charges, and the prior accusations were not proved false.  One accusation terminated in a finding of no probable cause; the other culminated in two hung juries.  
Alexander
, 116 Ill. App. 3d at 857.  The court held the proffered evidence was irrelevant and inconclusive on the issue of complainant's credibility, because there was nothing to show the charges were unsubstantiated or that they were false in any manner.  
Alexander
, 116 Ill. App. 3d at 860-61.   The trial court did not err in excluding the evidence, especially given the statute's "policy of excluding irrelevant material which potentially may be introduced to harass a complaining witness in a rape case."  
Alexander
, 116 Ill. App. 3d at 861.     

Similarly, in 
People v. Hodges
, 264 Ill. App. 3d 785, 787, 636 N.E.2d 638 (1993), the court held the defendant was prohibited from introducing evidence to prove the victim did not pursue prosecution of a man who allegedly raped her previously.  The defendant contended the victim made a false complaint against the previous individual and against him to hide her consensual sexual relations from her husband.  The court defined evidence as relevant "'if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'"  
Hodges
, 264 Ill. App. 3d at 787, citing 
People v. Kimbrough
, 138 Ill. App. 3d 481, 487-88, 485 N.E.2d 1292 (1985).  The court held the evidence offered by defendant was "irrelevant, void of any probative value, and highly prejudicial."  
Hodges
, 264 Ill. App. 3d at 787.

Defendant contends the trial court failed to consider the second exception to the rape shield statute–-the evidence should be allowed where "constitutionally required" to be admitted.  Even if defendant is correct that the trial court ignored the second exception, he has offered no evidence that the victim's prior claim of sexual assault was made falsely.  This court has held a failure to make an adequate offer of proof results in a waiver of the issue on review.  
People v. Grant
, 232 Ill. App. 3d 93, 103-104, 596 N.E.2d 813 (1992).  Lakita's failure to follow up on the prosecution of the previous complaint does not establish its falsity and sheds no light on whether she consented to sex with this defendant.  See 
Hodges
, 264 Ill. App. 3d at 787.  Nor does defendant allege any motive for Lakita to make a false complaint of rape against him.  Whether or not evidence of the first incident is protected by the rape shield statute, defendant is unable to prove its relevance.  Pursuant to 
Sandoval
, 135 Ill. 2d at 174-75, the evidence must be relevant in order to supercede the protections of the statute.  The trial court did not abuse its discretion in refusing to allow the cross-examination.

II. Reasonable Doubt

Defendant next contends he was not proven guilty beyond a reasonable doubt, because the victim's testimony was incredible, inconsistent, and unsupported by other evidence, and his conviction was based on evidence inculpating the co-defendant.  

In reviewing the sufficiency of the evidence, the relevant question is whether, considering the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Cox
, 195 Ill. 2d 378, 387, 748 N.E.2d 166 (2001); 
People v. Green
, 322 Ill. App. 3d 747, 754, 751 N.E.2d 10 (2001).  
It is the trier of fact's responsibility to determine the witnesses' credibility and the weight to be given their testimony.  
People v. Ortiz
, 196 Ill. 2d 236, 258, 752 N.E.2d 410 (2001).  Although the determinations of the trier of fact are not conclusive, they are entitled to great deference, and a conviction will be overturned only where the evidence "is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt."  
Ortiz
, 196 Ill. 2d at 259.

Defendant contends the victim's testimony was incredible and unsupported by other evidence.  Our review of the record shows otherwise.  First, the testimony of a single witness, if it is positive and the witness credible, is sufficient to convict a defendant.  
People v. Smith
, 185 Ill. 2d 532, 541, 708 N.E.2d 365 (1999).  The trial judge, the finder of fact in this case, specifically found the victim's testimony to be credible.   Moreover, there was substantial physical and testimonial evidence corroborating the victim's account.   

Testimony that Lakita's face was swollen, and she had welts and swelling about her body are corroborated by photographs in the record.  Several witnesses testified she was crying and appeared distraught.  Her clothes were torn, her face appeared bloody, and she screamed when she saw defendants through the ambulance window.  A baseball bat and five condoms were removed from the apartment.  Forensic evidence revealed defendant's DNA and Lakita's DNA were found on two of the five condoms recovered from the apartment.  Lakita testified she had several opportunities to view defendant's face, and she made a positive identification shortly after the incident and at trial.  

Defendant contends the DNA evidence in the case was suspect because the DNA of other unidentified people was found on some of the condoms in the garbage bag.  Defendant's DNA was not found on the vaginal swabs taken from the victim.  This argument is unpersuasive.  The victim testified she remembered condoms being used during the assaults.  She testified that both defendants, as well as a third man, repeatedly sexually assaulted her throughout the night.  Her DNA and defendant's DNA were found on two of the five condoms. The DNA evidence is consistent with the victim's account.  There is no evidence, as defendant contends, that the trial court wrongly convicted him based on evidence inculpating his co-defendant.  Ample evidence was presented at trial inculpating this defendant.       

III. 
Krankel
 Hearing

Defendant contends the trial court should have 
sua
 
sponte 
ordered a hearing to investigate his counsel's negligence and incompetence, pursuant to 
People v. Krankel
, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984).  In support, he contends his counsel failed to subject the State's DNA evidence to any adversarial testing, failed to object to hearsay statements offered by the State, and failed to adopt the cross-examination of co-defendant's counsel.  Defendant asks us to remand the case for a hearing to inquire into the alleged incompetence.  Alternatively, defendant contends he is entitled to a new trial based on his counsel's ineffective assistance. 

In 
Krankel
, 102 Ill. 2d at 183, the defendant filed a 
pro
 
se
 motion for a new trial, alleging ineffective assistance based on his trial counsel's failure to contact an alibi witness and present an alibi defense.  The supreme court agreed with the parties that new counsel should have been appointed to represent the defendant on his 
pro
 
se
 motion.  
Krankel
, 102 Ill. 2d at 189. The court remanded the case for the appointment of new counsel to represent the defendant at a new hearing.  
Krankel
, 102 Ill. 2d at 189.

Unlike 
Krankel
, in this case, defendant did not raise the issue of ineffective assistance before the trial court, either at trial or in a post-trial motion.  Defendant relies on 
People v. Williams
, 224 Ill. App. 3d 517, 524, 586 N.E.2d 770 (1992), where the court held, "[w]here there is a clear basis for an allegation of ineffectiveness of counsel, a defendant's failure in explicitly making such an allegation does not result in a waiver of a Krankel problem."  In 
Williams
, the defendant did not file a 
pro
 
se
 petition or write to the judge claiming ineffective assistance; however, the trial judge's "strong comments to counsel at the hearing" showed he was made aware of counsel's possible neglect.  
Williams
, 224 Ill. App. 3d at 517.  

This case differs from 
Williams
, in that the trial court was not presented with evidence that trial counsel was neglectful in presenting witnesses or putting on a defense.  See 
People v. Henney
, 334 Ill. App. 3d 175, 190, 777 N.E.2d 484 (2002).  The trial court did not err in failing to inquire into the effectiveness of defense counsel, because the record does not show a "clear basis" for an allegation of ineffectiveness.  
Henney
, 334 Ill. App. 3d at 190; 
People v. Ephraim
, 323 Ill. App. 3d 1097, 1114, 753 N.E.2d 486 (2001); 
People v. Gillespie
, 276 Ill. App. 3d 495, 503, 659 N.E.2d 12 (1995).  

Defendant's allegations of defense counsel's errors do not rise to the level of depriving defendant of a defense.  
Henney
, 334 Ill. App. 3d at 190.  At most, they amount to claims of errors in judgment or matters of trial strategy, which, even if demonstrated, do not support a claim of ineffective assistance of counsel.  
Gillespie
, 276 Ill. App. 3d at 503.  

Defendant contends, in the alternative, that he is entitled to a new trial, pursuant to the holding in 
People v. Hayes
, 229 Ill. App. 3d 55, 65, 593 N.E.2d 739 (1992).  In 
Hayes
, the court remanded the case for a new post-trial hearing because the trial court mistakenly believed that ineffective assistance of counsel was not a permissible basis for granting a motion for a new trial.  Here, defendant did not raise the issue of ineffective assistance before the trial court, so 
Hayes
 does not apply.    

IV. Hearsay

Defendant next contends the trial court erred in admitting the hearsay testimony of Nurse Mathews, who testified regarding statements Lakita made about the sexual assault.  At the outset, the State contends defendant waived this argument by failing to object at trial and failing to address the issue in his post-trial motions.  
People v. Enoch
, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988).  Defendant urges us to consider the issue under a plain error analysis.  

We may review a plain error affecting a defendant's substantial rights where: (1) the evidence is closely balanced, or (2) the error is of such magnitude that there is a substantial risk the defendant was denied a fair and impartial trial, and remedying the error is necessary to preserve the integrity of the judicial process.  
People v. Vargas
, 174 Ill. 2d 355, 363, 673 N.E.2d 1037 (1996).  If we find plain error, we must further decide whether this error requires reversal or was harmless to the defendant.  Errors are harmless if they did not contribute to the defendant's conviction or overwhelming evidence supported the defendant's conviction.  
People v. Johnson
, 317 Ill. App. 3d 666, 676, 740 N.E.2d 457 (2000).   

The issue is whether Lakita's statements to Mathews are inadmissible hearsay or fall under the hearsay exception for statements made by the victim to medical personnel for purposes of diagnosis or treatment.  Section 115-13 of the Code of Criminal Procedure provides, in part:

"statements made by the victim to medical personnel for purposes of medical diagnosis or treatment including descriptions of the cause of symptom, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admitted as an exception to the hearsay rule."  725 ILCS 5/115-13 (West 1992).  

A trial court is vested with discretion in determining whether the statements made by the victim were "reasonably pertinent to the victim's diagnosis or treatment."  
People v. Williams
, 223 Ill. App. 3d 692, 700, 585 N.E.2d 1188 (1992).  A trial judge, when acting as the finder of fact, is presumed to have considered only admissible evidence in reaching his decision.  
People v. Roy
, 201 Ill. App. 3d 166, 183 558 N.E.2d 1208 (1990).  

Lakita's statements to Mathews regarding the sexual assaults and the manner in which she was beaten and injured fall under the exception because they related to the cause of injuries and were pertinent to her diagnosis and treatment.  Defendant concedes the statements about her injuries fall within the exception.  However, Lakita's description of the events before the attack and after the attack, the statements defendants made to her, and her description of her attackers as "light-skinned" and "dark-skinned" individuals do not fall under the hearsay exception.  These statements were not "reasonably pertinent to diagnosis or treatment."  725 ILCS 5/115-13 (West 1992).  The identity of the persons who attacked her was not necessary to her receiving proper medical treatment, nor were the events related to the kidnaping and apprehension of the defendants.  Generally, statements concerning a cause of injury made to a treating physician are admissible under the physician-patient exception to the hearsay rule; however, identification of the offender is outside the scope of the exception.  
People v. Hudson
, 198 Ill. App. 3d 915, 921-22, 556 N.E.2d 640 (1990).  

We must address the question of whether the court's erroneous admission of these statements amounts to plain error.  First, we examine whether the evidence at trial was closely balanced.  Lakita testified that defendants kidnaped her from the front of her house, took her to a vacant apartment, and sexually assaulted and beat her over the course of the night of October 4, 1998.  The trial judge said he found Lakita's testimony to be credible.  Nurse Mathews testified Lakita's face was swollen, she had large areas of swelling and redness about her body, and she moaned when she moved.  Police officers and Lakita's boss testified that Lakita appeared "distraught," was screaming and crying, her face was bloody, and her clothes were torn.  The baseball bat and condoms found in the apartment, and defendant's DNA found on the condoms further corroborate the victim's account.  We conclude the evidence presented at trial against defendant was not closely balanced but was strongly in favor of conviction.  The error was waived; that is, forfeited.     

Even if we were to address the issue under plain error, the error resulting from the admission of Mathews' testimony was harmless.  The hearsay testimony was cumulative and corroborated by substantial other evidence.  No fact regarding the crime was introduced through hearsay testimony that was not also established by Lakita's own testimony.  
People v. Robinson
, 73 Ill. 2d 192, 200, 383 N.E.2d 164 (1978).  See 
People v. Warmack
, 44 Ill. App. 3d 243, 247, 358 N.E.2d 76 (1976) (if hearsay testimony is merely cumulative or is supported by a positive identification and by other corroborative circumstances, it constitutes harmless error).  

Lakita made a positive identification of defendant shortly after the incident and in court.  Mathews' testimony regarding Lakita's statements was corroborated by substantial physical and forensic evidence, and by the testimony of the witnesses who observed Lakita's physical appearance and demeanor shortly after the incident.  

In further mitigation of the error, defense counsel had the opportunity to cross-examine the out-of-court declarant, Lakita, regarding the statements she made to Mathews.  The main rationale underlying the exclusion of hearsay testimony is the opposing party's inability to test the real value of the testimony by exposing the source of the assertion to cross-examination.  
Robinson
, 73 Ill. 2d at 200.  Here, defense counsel thoroughly cross-examined Lakita about her statements and attempted to impeach her credibility with her statement to Mathews regarding the time she left her house.  Defense counsel cross-examined Mathews about Lakita's conflicting statement regarding the time she left her house.  Thus, defense counsel used the inadmissible hearsay to make a point about Lakita's credibility.  Any error in admitting the testimony was harmless and did not prejudice defendant.

CONCLUSION

We affirm the decision and rulings of the trial court.

Affirmed.

SOUTH, P.J., and HALL, J., concur.