2013 IL App (1st) 103835

FOURTH DIVISION
September 19, 2013

No. 1-10-3835

| | | |
|---|---|---|
| *In re* JOVAN A., a Minor | ) | Appeal from the |
| (The People of the State of Illinois, | ) | Circuit Court of |
| | ) | Cook County |
| Plaintiff-Appellee, | ) | |
| | ) | No. 10 JD 3836 |
| v. | ) | |
| | ) | Honorable |
| Jovan A., a Minor, | ) | Lori Wolfson, |
| | ) | Judge Presiding. |
| Respondent-Appellant). | ) | |

JUSTICE EPSTEIN delivered the judgment of the court, with opinion.
Justice Lavin concurred in the judgment and opinion.
Justice Pucinski dissented, with opinion.

**OPINION**

¶ 1        Following a bench trial, Jovan A. was adjudicated delinquent and sentenced to 18 months'

probation.  Respondent contends on appeal that the trial court improperly relied on hearsay,

specifically, the content of a craigslist.org advertisement, to find that he committed theft.[1]  For

the reasons that follow, we reverse respondent's conviction and remand this cause for further

proceedings.

¶ 2 BACKGROUND

¶ 3        Lori Bravi testified that she borrowed a Cervelo P2C triathalon bicycle from Elizabeth

Waterstrat.  At approximately 3:35 p.m. on July 18, 2010, she parked her car near 1652 West

---

[1] This case was recently reassigned by the court.

Cortland Avenue in Chicago, Illinois, and left the bicycle attached to a rack on her trunk while she entered a restaurant. Upon her return less than 10 minutes later, the bicycle was missing. She found a streak of green paint on her rear bumper.

¶ 4　　That night, Bravi searched craigslist.org for the bicycle. She explained that craigslist.org is "a website where people go to list items for sale." Respondent made several hearsay objections when the State examined Bravi about the website's content. The court overruled these objections, noting, "I will not allow it for the truth of the matter asserted, but I will allow it to explain the steps that were taken in pursuit of an arrest." Bravi then testified that she discovered an advertisement for a Cervelo P2C bicycle resembling Waterstrat's on craigslist.org. The advertisement included a telephone number and four photographs of Cervelo P2 bicycles, though not the P2C model. She then used an Internet service to find the address associated with the telephone number listed in the advertisement. Bravi provided the telephone number, address, and advertisement to Detective Castaneda at Area 5 police headquarters.

¶ 5　　Johana Cedicci testified that a sedan carrying respondent passed within 10 feet of her and Piper Gorsuch[2] near the 1600 block of Cortland Avenue at approximately 3:40 p.m. on July 18, 2010. Respondent was turned around in the front passenger seat, holding onto a "triathalon bicycle" that jutted out of the open rear door. It was a sunny afternoon, and nothing obstructed her view of respondent. On July 22, 2010, Cedicci viewed a photo array and a five-person lineup and tentatively identified two of the subjects. Respondent was not represented in either the photo

---

[2] There is some confusion as to whether her name is "Piper T. Gorsuch" or "Piper Tgorsuch." We have opted for "Gorsuch."

array or the lineup. On July 23, 2010, she viewed a second five-person lineup and positively identified respondent as the front seat passenger.

¶ 6    Piper Gorsuch testified that, at approximately 3:40 p.m. on July 18, 2010, she and Johana Cedicci were walking along the 1600 block of Cortland Avenue when an older, electric teal Japanese sedan disregarded a stop sign. Respondent sat in the front passenger seat with the window rolled down and was holding onto a Cervelo triathalon bicycle that stuck out of the open rear door. It was a bright, clear day, and respondent passed within 10 feet of her. Nothing obstructed Gorsuch's view of respondent. On July 22, 2010, Gorsuch viewed a photo array and lineup, but could not make a definite identification. On July 23, 2010, she viewed a second lineup and identified respondent as the front seat passenger.

¶ 7    Detective Jose Castaneda testified that Bravi, his former neighbor, contacted him regarding a stolen bicycle on July 19, 2010. Bravi told him that she believed the bicycle was being sold on craigslist.org, and Castaneda viewed the advertisement. When the State examined Castaneda regarding the advertisement's content, respondent made a hearsay objection. The State responded that the advertisement was not being offered for the truth of the matter asserted, but rather to show how the detective proceeded with his investigation. The trial court allowed the testimony for that limited purpose. Castaneda further testified that he performed a database search using the telephone number listed in the advertisement and discovered related names, addresses, and car registration information.

¶ 8    On July 23, 2010, Castaneda went to the 1600 block of North Oakley Avenue, where he found a car matching one of the witness's descriptions. He detained respondent and another

3

Hispanic male, who were sitting in the front seat. He further testified that, when he dialed the telephone number listed in the craigslist.org advertisement, respondent's cellular telephone rang. Respondent made another hearsay objection, which the trial court overruled, stating that the testimony would be allowed for a limited purpose.

¶ 9 On July 22, 2010, Castaneda showed Cedicci and Gorsuch a photo array, and they identified Miguel and Renee Salsedo. Later that day, Castaneda conducted a physical lineup with the Salsedos as subjects, but neither Cedicci nor Gorsuch was able to identify them. Respondent was not represented in either the photo array or the lineup. The following day, Castaneda arranged a second lineup, and Cedicci and Gorsuch identified respondent.

¶ 10 The parties stipulated that Elizabeth Waterstrat's bicycle had a value of between $5,000 and $6,000, and that neither she nor Bravi consented to respondent taking it.

¶ 11 During its oral pronouncement, the trial court noted that Bravi "did some independent investigation" and, as she "looked through some websites he she [*sic*] was able to see a picture of a bicycle that closely resembled the bike that was taken from her and she contacted her former neighbor, who was a detective, and the investigation proceeded from there." The court continued:

> "[Respondent's] attempt to sell the bicycle further reinforces that he had the intent to permanently deprive the true owner of that bicycle.
>
> When they called the number in the ad for sale, that phone rang in the minor's hand. That is significant evidence. Circumstantial evidence shows the minor knew the bicycle was not his. He did not have the right to be selling it,

4

No. 1-10-3835

　　　possessing it ***."

The trial court adjudicated respondent delinquent and sentenced him to 18 months' probation. This appeal followed.

¶ 12 ANALYSIS

¶ 13　　Respondent contends on appeal that the trial court improperly relied on hearsay evidence, specifically, the content of a craigslist.org advertisement, in finding that he committed theft. The State argues that respondent forfeited this issue and, alternatively, that no hearsay testimony was admitted. We hold that the trial court improperly admitted and relied on the content of the craigslist.org advertisement. Because this error was not harmless beyond a reasonable doubt, we reverse and remand this cause for further proceedings.

¶ 14 A. Forfeiture

¶ 15　　We must first determine whether respondent preserved this issue for appellate review. The State maintains that respondent forfeited this argument when he failed to object during the trial court's oral pronouncement. Respondent claims that the trial court's reliance on hearsay evidence constituted plain error.

¶ 16　　Generally, to preserve an issue for appeal, a criminal defendant must object at trial and raise the issue in a posttrial motion. *People v. Herron*, 215 Ill. 2d 167, 175 (2005). In juvenile proceedings, the respondent must object at trial, but need not include the issue in a post-adjudication motion. *In re M.W.*, 232 Ill. 2d 408, 430 (2009). In this case, respondent timely and repeatedly objected during Bravi's and Detective Castaneda's testimony to the admission of hearsay. These objections were sufficient to preserve this issue for review.

5

¶ 17    The State acknowledges these objections, but argues that respondent "did not object when the trial court allegedly relied on the purported hearsay for the truth of the matter asserted to establish respondent's identity as the offender."  The State cites no authority for the proposition that a respondent must object during a court's oral pronouncement to preserve an evidentiary issue, and no such authority appears to exist.  See *People v. Ford*, 301 Ill. App. 3d 56, 59 (1998) (reviewing courts need not address arguments that lack citation to relevant authority); see also Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008) (argument must be supported by citation to authority). Accordingly, we reject the State's forfeiture argument.

¶ 18 B. Standard of Review

¶ 19    We must next determine the appropriate standard of review.  Relying on *People v. Chapman*, 194 Ill. 2d 186, 217 (2000), respondent contends that, because "this issue concerns the judge's compliance with the law, and not determinations of credibility, this Court's review is *de novo*." *Chapman* addressed a fourth amendment issue wholly unrelated to the instant evidentiary question. *Chapman*, 194 Ill. 2d at 217.  The portion cited by respondent merely sets forth the general proposition that purely legal issues are reviewed *de novo*. *Id.*  Because it does not concern the admission of, and reliance on, hearsay, we find *Chapman* unavailing.

¶ 20    The State argues that this issue should be reviewed for abuse of discretion.  We agree. Evidentiary rulings are within the sound discretion of the trial court and will not be reversed absent an abuse of discretion.  *People v. Caffey*, 205 Ill. 2d 52, 89 (2001).  Specifically, Illinois courts apply an abuse-of-discretion standard when reviewing a trial court's decision regarding the admission of hearsay.  See, *e.g.*, *Caffey*, 205 Ill. 2d at 89; *People v. West*, 158 Ill. 2d 155, 164-65

(1994). An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Patrick*, 233 Ill. 2d 62, 68 (2009).

¶ 21 C. Hearsay Analysis

¶ 22 Respondent contends that the trial court admitted Bravi's and Detective Castaneda's testimony regarding the content of the craigslist.org advertisement to show the course of their investigation, but improperly considered that testimony for the truth of the matter asserted. The State argues that no out-of-court statements were admitted, because neither Bravi nor Detective Castaneda testified regarding the content of the craigslist.org advertisement.

¶ 23 Hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted. *Caffey*, 205 Ill. 2d at 88. Hearsay is generally inadmissible, unless it falls within an exception to the rule. *Id.* at 89. One such exception holds that police officers may testify to information they received during the course of an investigation to explain why they arrested a defendant or took other action. *People v. Rush*, 401 Ill. App. 3d 1, 15 (2010). Such testimony is not hearsay, because it is offered to show the steps an officer took rather than for the truth of the matter asserted. *Id.* Under the course-of-investigation exception to the hearsay rule, an officer may not testify to information beyond what is necessary to explain his or her actions. *People v. Edgecombe*, 317 Ill. App. 3d 615, 627 (2000). Nor may an officer testify to the content of any statements he received. *People v. Gacho*, 122 Ill. 2d 221, 248 (1988).

¶ 24 Here, we must determine whether Bravi's and Detective Castaneda's testimony regarding the content of a craigslist.org advertisement was admissible to show the course of their

7

No. 1-10-3835

investigation.  We examine their statements separately.

¶ 25 1. *Bravi*

¶ 26     At trial, Bravi testified that she discovered a craigslist.org advertisement for a Cervelo

P2C bicycle similar to Waterstrat's.  She explained that craigslist.org is a website where items

may be listed for sale.  Bravi further stated that the advertisement contained four photographs of

Cervelo bicycles, though they depicted other Cervelo models.  Finally, she testified that she

recorded the telephone number listed in the advertisement and, through research, determined the

address that corresponded with that number.  Over respondent's objection, the trial court allowed

her testimony "to explain the steps that were taken in pursuit of an arrest."

¶ 27     Bravi's testimony regarding the advertisement's content constituted hearsay.  Illinois

courts have long held that hearsay includes written out-of-court statements.  *People v. Carpenter*,

28 Ill. 2d 116, 121 (1963) (hearsay includes written evidence).  Further, hearsay includes both

matters directly asserted and matters the declarant necessarily implicitly intended to express.

*People v. Thomas*, 178 Ill. 2d 215, 237 (1997).  The statement here consisted of the

advertisement's written content and the implication that a Cervelo P2C bicycle was for sale and

that interested parties could contact the seller via the telephone number listed.

¶ 28     The trial court recognized that the State was offering an out-of-court statement, but

admitted it to show course of investigation, noting that Bravi may "explain the steps that were

taken in pursuit of an arrest."  Police officers may testify to information they received during the

course of an investigation to explain why they arrested a defendant or took other action.  *Rush*,

401 Ill. App. 3d at 15.  Such testimony is not hearsay, because it is offered to show the steps an

8

officer took rather than for the truth of the matter asserted. *Id.*

¶ 29    Bravi, however, was not a police officer. She was a layperson conducting her own private investigation. The State argues that Bravi's testimony was "analogous to a situation where a police officer testified about the course of his or her investigation" and advocates the extension of this exception to laypersons. The State cites no authority for this proposition, and none appears to exist. See *Ford*, 301 Ill. App. 3d at 59 (reviewing courts need not address arguments that lack citation to relevant authority); see also Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008) (argument must be supported by citation to authority).

¶ 30    Moreover, we see no need to address whether the course-of-investigation exception should be extended to laypersons. By any measure, Bravi's testimony was inadmissible, as it exceeded the bounds of the course-of-investigation exception, where she testified to the advertisement's content. *People v. Jones*, 153 Ill. 2d 155, 160 (1992) (substance of statement normally inadmissible under course-of-investigation exception); *People v. Morgan*, 142 Ill. 2d 410, 447 (1991), *rev'd on other grounds*, *Morgan v. Illinois*, 504 U.S. 719 (1992) (same); *Gacho*, 122 Ill. 2d at 248 ("Had the substance of the conversation *** been testified to, it would have been objectionable hearsay."). Accordingly, Bravi's testimony regarding the content of the craigslist.org advertisement constituted hearsay and should not have been admitted at trial.

¶ 31 2. *Detective Castaneda*

¶ 32    Detective Castaneda testified that he spoke to Bravi, who told him that Waterstrat's bicycle was being sold on craigslist.org. Upon viewing the website, he found a telephone number, and based on that number was able to obtain related names, addresses, and car

registration information. He further testified that, when he arrested respondent, he called the telephone number listed in the advertisement, and respondent's cellular telephone rang. Respondent repeatedly objected to Detective Castaneda's testimony. The trial court again recognized that the State sought to offer an out-of-court statement, but admitted the testimony to show "how the detective proceeded with his investigation."

¶ 33    Unlike Bravi, Detective Castaneda was a police officer acting in the line of duty. In order for him to explain the course of his investigation, it was necessary for him to testify that, after viewing a craigslist.org advertisement, he went to the 1600 block of North Oakley Avenue, where he discovered a car matching the description he received and subsequently detained respondent. Had the detective's testimony been limited to this information, it would have been admissible, even though the trier of fact could have inferred that the advertisement implicated respondent. See *Gacho*, 122 Ill. 2d at 248 (testimony admissible even though the inference to be drawn therefrom is that the information motivated the officer's conduct).

¶ 34    But Detective Castaneda also testified regarding the advertisement's content. Specifically, he stated that Bravi told him that Waterstrat's bicycle was being sold on craigslist.org and that respondent's cellular telephone rang when he called the number listed in the advertisement. Generally, under the course-of-investigation exception, an officer may not testify to a statement's content. *Jones*, 153 Ill. 2d at 160 (substance of statement normally inadmissible under course-of-investigation exception); *Morgan*, 142 Ill. 2d at 447 (same); *Gacho*, 122 Ill. 2d at 248 (same).

¶ 35    In *People v. Jura*, 352 Ill. App. 3d 1080, 1088, 1095 (2004), this court reversed and remanded for a new trial, where the trial court improperly admitted the content of a police radio

message under the course-of-investigation exception. The *Jura* court noted that the substance of the message "directly impacts the very essence of the dispute: whether the defendant was the man who possessed the gun." *Id.* at 1088. In this case, the trial court admitted the content of a craigslist.org advertisement under the course-of-investigation exception. Here, as in *Jura*, the content of the craigslist.org advertisement directly impacts the very essence of the dispute: whether respondent was the person who took Waterstrat's bicycle. Further, the advertisement's content was not necessary to explain the course of Detective Castaneda's investigation. See *Edgecombe*, 317 Ill. App. 3d at 627 (under the course-of-investigation exception to the hearsay rule, an officer may not testify to information beyond what is necessary to explain his or her actions). Because it was inadmissible under the course-of-investigation exception, the advertisement's content constituted hearsay and should not have been admitted at trial.

¶ 36 D. Harmless Error Analysis

¶ 37 Because error occurred, we must engage in a harmless error analysis. The remedy for erroneous admission of hearsay is reversal, unless the record clearly shows that the error was harmless beyond a reasonable doubt. *People v. Miles*, 351 Ill. App. 3d 857, 867 (2004). When examining whether an error was harmless beyond a reasonable doubt, reviewing courts must ask whether there is a reasonable probability that the trier of fact would have acquitted the defendant had the hearsay been excluded. *People v. Warlick*, 302 Ill. App. 3d 595, 601 (1998).

¶ 38 The State was required to prove that respondent knowingly obtained or exerted unauthorized control over Waterstrat's bicycle, which had a value exceeding $300, and that he did so with the intent to permanently deprive Waterstrat of her bicycle. 720 ILCS 5/16-

11

No. 1-10-3835

1(a)(1)(A) (West 2010). There were only two contested issues at trial: (1) whether respondent was the front seat passenger in the teal sedan; and (2) whether the bicycle in the teal sedan was Waterstrat's.

¶ 39 Regarding the first question, the trial court credited Cedicci's and Gorsuch's identifications of the respondent as the front seat passenger: "The witnesses were clear, uncontroverted in their observations [and] their ability to see the minor respondent's face***." The court also discounted the only evidence that undercut these identifications, finding that the photo array "was not done in the police station and it was not done under circumstances that I believe support the reliability of that identification." Thus, even excluding Bravi's and Detective Castaneda's hearsay testimony, there was sufficient evidence that respondent was the front seat passenger in the teal sedan.

¶ 40 Turning to the second question, although no one observed respondent take Waterstrat's bicycle, and the bicycle was not recovered, the State presented circumstantial evidence that the bicycle in the teal sedan was Waterstrat's. Specifically, Gorsuch testified that the bicycle in the sedan was a Cervelo triathalon bicycle, the same as Waterstrat's. The bicycle was seen on the 1600 block of West Cortland Avenue, where the offense took place, approximately five minutes after the bicycle was taken. Additionally, rather than being mounted to a rack, the bicycle jutted haphazardly out of the car's open rear door.

¶ 41 It is possible that a trier of fact could find, based on this evidence, that the bicycle in the teal sedan was Waterstrat's. But the trial court's oral pronouncement did not show reliance on this evidence. Instead, its stated reasoning rested almost entirely on hearsay. During its oral

12

pronouncement, the court noted that Bravi "did some independent investigation on her own to try to determine what happened to the bicycle. As she looked through some websites he she [*sic*] was able to see a picture of a bicycle that closely resembled the bike that was taken from her ***." The court further found that, "When they called the number in the ad for sale, that phone rang in the minor's hand. That is significant evidence. Circumstantial evidence shows that minor knew the bicycle was not his. He did not have the right to be selling it [or] possessing it ***." Given the trial court's express and nearly exclusive reliance on hearsay in addressing this question, we find that there is a reasonable probability that the trier of fact would have acquitted respondent had the hearsay been excluded.

¶ 42 In reaching this conclusion, we recognize that, unlike in a jury trial, when a judge sits as the trier of fact, we must presume that he or she will only consider competent evidence. *People v. Naylor*, 229 Ill. 2d 584, 603-04 (2008). This presumption is overcome, however, where the record affirmatively shows that the judge considered improper evidence. *Id.* Here, the record affirmatively shows that the trial judge relied heavily on the hearsay content of the craigslist.org advertisement. Indeed, the trial judge did not expressly rely on any other evidence in finding that the bicycle in the teal sedan was Waterstrat's. Accordingly, we find that the presumption that the trial judge relied only on competent evidence has been overcome.

¶ 43 The outcome would likely have been different had the trial court not expressly relied on hearsay during its oral pronouncement. For instance, had the court forgone a lengthy pronouncement, or relied in its pronouncement upon properly admitted evidence, we would likely find the error harmless. Compare *In re E.H.*, 377 Ill. App. 3d 406, 415-16 (2007) (error

13

not harmless beyond a reasonable doubt where trial judge expressly relied on inadmissible hearsay), and *People v. Johnson*, 296 Ill. App. 3d 53, 66 (1998) (same), with *People v. Yancy*, 368 Ill. App. 3d 381, 385-87 (2005) (error harmless where there was no evidence to overcome the presumption that the trial judge disregarded hearsay testimony), and *People v. Cassell*, 283 Ill. App. 3d 112, 125 (1996) (same). Here, as in every case, we do not know the full basis of the trial judge's factual findings. We know only what the judge stated in her oral pronouncement. Based on that pronouncement, we know that the judge relied heavily on hearsay to find that the bicycle in the teal sedan was Waterstrat's. Accordingly, we must reverse and remand for a new trial.

¶ 44 While the dissent seeks to recast the issue presented as reasonable doubt and reverse respondent's delinquency adjudication outright, neither side raised reasonable doubt in its briefs, nor does respondent seek the remedy of outright reversal that the dissent would give. Indeed, the phrase "outright reversal" appears nowhere in the six briefs filed in this case. Rather, respondent repeatedly asks this court for reversal and "remand for further proceedings." The parties also devote considerable attention to forfeiture and plain error arguments that would be irrelevant to a reasonable doubt issue. See *People v. Enoch*, 122 Ill. 2d 176, 190 (1988) (criminal defendants need not preserve reasonable doubt for appellate review). We should not ignore the issues raised, briefed, and argued by the parties, and without input from them, decide the case on a basis that was not addressed by the parties. See *People v. Givens*, 237 Ill. 2d 311, 323-30, 339 (2010) (vacating the appellate court's judgment and remanding for further proceedings, where the court ignored issues raised by the parties and *sua sponte* considered an issue not raised, briefed, or

14

argued); *People v. McNeal*, 405 Ill. App. 3d 647, 676 (2010) ("a reviewing court should not normally search the record for unargued and unbriefed reasons to reverse a trial court judgment" (emphasis and internal quotation marks omitted)); see also *Greenlaw v. United States*, 554 U.S. 237, 244 (2008) ("'[Courts] do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties.'" (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (Arnold, J., concurring in denial of reh'g *en banc*))). This is not, as the dissent asserts, "an evidence question with an inadmissible evidence question inside it, a reasonable doubt question inside that and a sufficiency of the evidence question at its core." *Infra* ¶ 71. See *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007) (equating reasonable doubt and sufficiency of the evidence analyses). Each party viewed this case as raising an evidentiary matter, and so do we.

¶ 45   Nor can we agree with the dissent's equation of reasonable doubt and harmless error analyses. As we explain above, the remedy for erroneous admission of hearsay is reversal, unless the record clearly shows that the error was harmless beyond a reasonable doubt. *Miles*, 351 Ill. App. 3d at 867. When examining whether an error was harmless beyond a reasonable doubt, reviewing courts must ask whether there is a reasonable probability that the trier of fact would have acquitted the defendant had the hearsay been excluded. *Warlick*, 302 Ill. App. 3d at 601. In this context, the phrase "beyond a reasonable doubt" refers not to proof beyond a reasonable doubt of a defendant's guilt, but proof beyond a reasonable doubt that the error did not contribute to the finding of guilt. See *People v. Smith*, 38 Ill. 2d 13, 15 (1967) (citing *Chapman v. California*, 386 U.S. 18, 23 (1967)). We therefore disagree with the dissent's contention that

15

"harmless error analysis requires a reasonable doubt determination." *Infra* ¶ 70.

¶ 46    Even if we addressed the issue raised by the dissent, we would not reach its conclusion that the prosecution failed to prove respondent guilty beyond a reasonable doubt. Two witnesses identified respondent, both in a lineup and at trial, as the person holding onto a triathalon bicycle that jutted haphazardly out of the open rear door of a fast-moving car. Not only did they observe the car on the same block as the offense and within five minutes of the offense, but Gorsuch identified the bicycle as a Cervelo brand triathalon bicycle, the same as Bravi's. Nor did the witnesses "provide only minimal detail about the incident," as the dissent suggests. *Infra* ¶ 56. Because respondent passed within 10 feet of the witnesses on a clear and sunny afternoon, and because the witnesses had unobstructed views, they were able to describe the action with considerable specificity: respondent sat in the front seat; he was turned around in his seat; his window was rolled down; the car was an older, electric teal Japanese sedan; the car ran a stop sign; a bicycle jutted out of the open rear door; and the bicycle was a Cervelo triathalon bicycle, like Bravi's.

¶ 47    We also find Cedicci's and Gorsuch's identifications compelling. Although the witnesses tentatively identified the Salsedos in a photo array, they abandoned these identifications upon viewing the Salsedos in person. Later, when respondent was a lineup subject, Cedicci and Gorsuch showed no hesitation in positively identifying him. The trial court credited these identifications.

¶ 48    The dissent also notes that respondent has already served his sentence and, according to the presentence investigation report, was 16 and learning disabled at the time of the offense.

No. 1-10-3835

Respondent's completion of his sentence should have no bearing on our decision. See *People v. Jordan*, 218 Ill. 2d 255, 263 (2006) (fact that defendant has already served sentence does not render appeal moot). Similarly, respondent's age is irrelevant, as theft requires proof of the same elements regardless of age. See 720 ILCS 5/16-1 (West 2010); see also *People v. Morgan*, 197 Ill. 2d 404, 424-25 (2001) (society has a legitimate interest in being protected from criminal acts perpetrated by minors). Likewise, although it was pertinent at sentencing, respondent's learning disability is irrelevant both to the evidentiary matter raised by the parties and the reasonable doubt matter raised by the dissent and should not be considered on appeal. See *People v. Fontana*, 251 Ill. App. 3d 694, 702-03 (1993) (where defendant does not present an insanity defense, evidence of his learning disability is irrelevant during guilt phase).

¶ 49 CONCLUSION

¶ 50    For the foregoing reasons, we reverse respondent's delinquency adjudication and sentence and remand for further proceedings.

¶ 51    Reversed and remanded for further proceedings.

¶ 52    JUSTICE PUCINSKI, dissenting.

¶ 53    I respectfully dissent from the majority's decision to reverse and remand respondent's delinquency adjudication. There are three possible options to resolve this appeal: affirm, reverse outright or reverse and remand for further proceedings. I would reverse outright.

¶ 54    The majority and I agree that error has occurred, and the trial court's reliance on the craigslist.org advertisement and all that flowed from it was improper. We disagree only on whether there should be a new trial.

17

No. 1-10-3835

¶ 55    The issue then is whether the judge's error in a bench trial was an evidence error, *i.e.*, hearsay error or a sufficiency of the evidence error.

¶ 56    The trial court in its findings erroneously relied on the hearsay evidence offered but not allowed in both Bravi's testimony that she saw an advertisement for a different Cervelo P2C bicycle on craigslist.org and Detective Castaneda's testimony that a cell phone that respondent was holding rang when he dialed the number listed in the advertisement as substantive evidence. Since all of this must be out, all that remains in is the slight circumstantial evidence consisting of the testimony of Cedicci and Gorsuch. After originally identifying two different individuals, Cedicci and Gorsuch then identified respondent in a lineup two days later. The witnesses could provide only minimal detail about the incident. They described seeing two males driving by in a vehicle for a fleeting moment. The passenger, whom they believed could have been respondent, was holding onto a nondescript triathlon bicycle partially jutting out of the back door of the car. Essentially they saw a man turned around in the front seat toward the back holding on to both the car door and a bicycle with the tire sticking out. I do not believe this evidence alone supports a finding of guilt beyond a reasonable doubt for the offense of theft.

¶ 57    At this point, when left with minimal circumstantial evidence regarding a special education student with a learning disability (according to the presentence report in the record) who was 16 at the time and who has already served his full 18–month term of probation, I would opt to resolve the apparent inconsistent drafting of appellant's briefs by choosing the most pragmatic disposition to this case. In various sections of the briefs, appellant requests either outright reversal (brief page I., page 2, and page 9; reply brief page 1; and supplemental brief

18

page 7) or reversal and remand (brief page 9 and page 15; reply brief page 4; and supplemental brief page 8) for further proceedings. This ambiguity presents an opportunity to address the more precise issue, one allowing for a sufficiency of the evidence analysis, and a subsequent reversal outright.

¶ 58 Ultimately, respondent is attacking the trial court's delinquency determination based on the evidence, and "such an attack is analogous to a criminal defendant's appellate attack on the sufficiency of evidence to convict in a criminal bench trial." *In re Driver,* 46 Ill. App. 574, 575-76 (1977); see also *In re Malcolm H.,* 373 Ill. App. 3d 891, 893-94 (2007) (constitutional protection of proof beyond a reasonable doubt applies to the adjudicatory stage of juvenile delinquency proceedings); *People v. Berrier,* 362 Ill. App. 3d 1153, 1169-70 (2006) (defendant's challenge to the sufficiency of the evidence supporting his drug possession conviction was that there was no evidence that the materials discovered were actually controlled substances and no credible evidence to support the conclusion that he actually possessed the drugs, and as to his criminal damage to property conviction, there was no proof that he knowingly caused the damage). Under these circumstances, it is our responsibility to determine whether, after viewing the still remaining evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *In re W.C.,* 167 Ill. 2d 307, 336 (1995).

¶ 59 Generally, the State must prove, beyond a reasonable doubt, the elements of the substantive offense alleged in a delinquency petition, and in doing so, the State may be entitled to rely upon presumptions or inferences. *In re W.C.,* 167 Ill. 2d at 336. To sustain respondent's

conviction for theft in this case, the State was required to prove that the respondent *knowingly* obtained or exerted unauthorized control over the specific bicycle of the owner, intending to permanently deprive the owner of the use and benefit of her bicycle. 720 ILCS 5/16-1(a)(1)(A) (West 2010). Theft requires proof of two mental states. *People v. Jones,* 149 Ill. 2d 288, 296 (1992). The two necessary elements of theft, a proscribed act committed knowingly (*People v. Nunn,* 77 Ill. 2d 243, 249 (1979)) and the requisite intent, must coincide. *People v. Haissig,* 2012 IL App (2d) 110726, ¶ 26; see *People v. Haynes,* 132 Ill. App. 2d 1031, 1032 (1971) ("[a] person could have exerted unauthorized control over property knowingly without intending to permanently deprive the owner of the use of the property").

¶ 60    This court recently stated "[a]lthough interpreting a different statute, the Illinois Supreme Court concluded that ' "knowledge" traditionally a form of general intent, [was] the requisite mental state applicable to the provision as a whole.' " *People v. Hernandez*, 2012 IL App (1st) 092841, ¶ 31 (quoting *People v. Frieberg*, 147 Ill. 2d 326, 347 (1992)).

¶ 61    The *Hernandez* court went on to discuss the use of the knowledge requirement concluding, in a case based on the Illinois Identity Theft Law,  (720 ILCS 5/16-G-1 *et seq*. (West 2008)) that under the Illinois statutory scheme, the adverb "knowingly" modifies the verb "uses" and also modifies the subsequent phrase "of another person. " *Hernandez*, 2012 IL App (1st) 092841, ¶¶ 37, 39.

¶ 62    I believe the same can be said about theft. I believe the adverb "knowingly" modifies the words "obtained or exerted" and "unauthorized control" and "intended to deprive" – none of which the State has proven.

¶ 63    " 'The State must present sufficient evidence from which an inference of knowledge can be made, and any inference must be based upon established facts and not pyramided on intervening inferences.' " *In re Keith C.,* 378 Ill. App. 3d 252, 260 (2007) (quoting *People v. Weiss,* 263 Ill. App. 3d 725, 731 (1994)).  Knowledge is distinguishable from intent in that it does not necessitate a showing of conscious objective or aim and contemplates what the person was " 'subjectively, consciously aware of.' "  *People v. Kotlinski,* 2011 IL App (2d) 101251, ¶ 54 (quoting 1 John F. Decker, Illinois Criminal Law §§ 2.33, 2.34 (2d ed. 1993)).  Coincidentally, proof of respondent's intent to permanently deprive could include his "use, abandonment, or concealment of the property, or consist entirely of his initial taking or control over the property under circumstances suggesting that he intends to permanently retain it."  *Haissig,* 2012 IL App (2d) 110726, ¶ 32.

¶ 64    The requisite knowledge and intent for a theft charge may be proven indirectly by inference or by deduction made by the trier of fact based upon the facts and circumstances of the case.  *People v. Cameron,* 2012 IL App (3d) 110020, ¶ 32.  "Direct evidence has been defined as evidence which, if believed, proves the existence of the fact in issue *without inference or presumption*, whereas circumstantial evidence is evidence which, without going directly to prove existence of a fact, gives rise to a *logical inference* that such fact does exist."  (Emphasis added.) *People v. Christiansen,* 118 Ill. App. 2d 51, 56 (1969).

¶ 65    Inferences which constitute elements of the offense, such as the requisite state of mind, should be based directly on established facts and not pyramided upon intervening inferences. *People v. Davis,* 50 Ill. App. 3d 163, 168 (1977).  According to the State, "the record reflects that

21

the [trial] court drew *reasonable* inferences from Ms. Bravi's and Detective Castaneda's non-hearsay testimony, *logically concluded* that respondent had attempted to sell Ms. Waterstra[a]t's bicycle, and found that this was yet further evidence of respondent's intent to permanently deprive her of her bicycle."  (Emphases added.)   We note there is no evidence, direct or circumstantial, that specifically links this respondent to the particular bicycle in question.  The bicycle was not recovered.

¶ 66     I am mindful that the finding of a trial court, in a nonjury case, as here, is entitled to great weight because the court is able to observe the witnesses, assess their credibility and determine the weight to be accorded their testimony.  *People v. Gillespie,* 276 Ill. App. 3d 495, 499-500 (1995).  I do not second-guess the credibility determinations made by the trial court, nor do I attempt to resolve conflicts in the testimony any differently than did the trial court.  *Gillespie,* 276 Ill. App. 3d at 500.  I also recognize that a defendant can be found guilty of theft solely on the basis of knowingly exerting unauthorized control over the property of another *at the time of arrest*, because the crime of theft is not limited to the original taking of the property, but this is not such a case.  *People v. Alexander,* 93 Ill. 2d 73, 78 (1982); see also *People v. Price,* 221 Ill. 2d 182, 193 (2006).

¶ 67     Here, in finding respondent delinquent based on theft, the trial court noted that the offense does not require that someone be seen taking property, but that the person knowingly possesses property with the intent to permanently deprive the rightful owner of that property.

¶ 68     The majority opines that the dissent seeks to "recast the issue presented as reasonable doubt and reverse respondent's delinquency adjudication outright, neither side raised reasonable

22

doubt in its briefs nor does the respondent seek the remedy of outright reversal. " *Supra* ¶ 44 (citing from *People v. Givens*, 237 Ill. 2d 339 (2010); *People v. McNeal*, 405 Ill. App. 3d 676 (2010); and *Greenlaw v. United States*, 554 U.S. 244 (2008)).

¶ 69    The defense did, however, fully brief due process in his argument (brief pages 10 and 15 and supplemental brief pages 6-7) against the judge's reliance on hearsay evidence which was never admitted for its truth, following up with an analysis of that hearsay error that the error was not harmless (brief pages 14-15) and stating on page 14, "Consequently Jovan's finding of guilt cannot stand unless consideration of the hearsay is harmless beyond a reasonable doubt."  The defense argued it was not harmless and the majority and I agree on that.

¶ 70    In the majority opinion, the issue of harmless error is explained, starting at paragraph 36, as "The remedy for erroneous admission of hearsay is reversal, unless the record clearly shows that the error was harmless beyond a reasonable doubt." *Supra* ¶ 37.  The harmless error analysis requires a reasonable doubt determination.  The majority itself has therefore looked to reasonable doubt and has also found that the error was not harmless.  We agree on that.  We have come to different conclusions about the outcome.

¶ 71    What the majority ignores is that when all is said and done this is an evidence question with an inadmissible evidence question inside it, a reasonable doubt question inside that and a sufficiency of the evidence question at its core.  Like a dandelion gone to seed, when you blow away all the inadmissible evidence you are left with no evidence at all.

¶ 72    Relying solely on the allowable evidence, it cannot be said that the State has proved beyond a reasonable doubt that: (1) it was the respondent in the car, where two witnesses

positively identified two other young men first, then identified defendant in a lineup that defense believes was suggestive. But even if they saw respondent holding a bicycle in that car, there is (2) no proof respondent knew the bicycle was stolen; (3) no proof it was the bicycle in question; (4) no proof respondent exerted unauthorized control over the particular bicycle in question; (5) no proof respondent intended to sell that bicycle or any bicycle; and (6) no proof respondent intended to permanently deprive the owner of her property.

¶ 73     Because there was insufficient evidence to prove essential elements of the crime, we should reverse outright.

¶ 74     Instead, the trial court relied on the very evidence which the court itself did not allow as substantive evidence and then cascaded that evidence into speculative findings of fact to satisfy the intent to permanently deprive element of theft. If this error constituted no more than an erroneous evidentiary ruling, we would have no choice but to reverse and remand.

¶ 75     However, no matter how inartfully the defense makes the point, it has demonstrated that without the craigslist ad and all that flows from it, the only evidence left – two witnesses, who at first misidentified the holder of the bicycle and did not describe the bicycle in any sufficient detail to distinguish it from what must be many, many bicycles in the area of the occurrence, and who certainly could not and did not testify as to the intent of the bicycle holder, let alone the respondent – is insufficient to sustain a conviction for theft. As a sufficiency of the evidence case, we are free to reverse outright and that is what I would do.

¶ 76     "[W]e will reverse a criminal conviction where the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt as to defendant's guilt." *People v.*

24

No. 1-10-3835

*Stewart*, 406 Ill. App. 3d 518, 531 (2010) (*People v. Smith*, 185 Ill. 2d 532, 542 (1999)).

¶ 77    However, even if we somehow got to the craigslist material and considered this an evidentiary error case, the State has still not proved *mens rea*, which brings us back full circle to the sufficiency of the evidence.  The trial court found that respondent's attempt to sell the bicycle "further reinforces" that he had the intent to permanently deprive the rightful owner of that bicycle, and referred to the fact that the cell phone in respondent's hand rang when the detective dialed the number listed in the classified ad as "significant evidence."  The trial court also found that the circumstantial evidence showed that respondent knew the bicycle did not belong to him, that he had no right to sell or possess it, and that it believed respondent was accountable for the theft whether he physically removed the bicycle from Bravi's car or physically held it in the "get-away car."

¶ 78    Turning to our colleagues in the Second District, in an identity theft case hinged on knowledge, Justice Schostok wrote "the State did not prove [Sanchez] possessed the necessary *mens rea* and thus her conviction cannot stand."  The case was reversed.  *People v. Sanchez*, 2013 IL App (2d) 120445, ¶ 47.

¶ 79    The State cites the following facts in support of the inferences upon which respondent's conviction are based:  Bravi saw a different bicycle and a phone number in a posting on craigslist.org.  Based on this posting, Bravi alerted Detective Castaneda, who investigated the phone number and learned that it was serviced by Cricket.  Then, Detective Castaneda went to an address where he detained respondent and observed a Cricket cell phone in respondent's hand.  Detective Castaneda dialed the phone number in the posting and heard that cell phone ring.

25

Another person dialed the same phone number and that cell phone rang again. Subsequently, Cedicci and Gorsuch identified respondent in a lineup.

¶ 80     There was no evidence that the cell phone belonged to respondent, that the craigslist ad was posted by respondent or that respondent knew about the ad or the phone number on it. And the craigslist ad itself was for a different bicycle.

¶ 81     Considering the aforementioned facts, in the light most favorable to the prosecution, I would conclude that the State's evidence did not allow the trial court to reasonably infer respondent's intent to permanently deprive the owner of her bicycle. *People v. Harmon,* 2012 IL App (3d) 110297, ¶ 17. As the State notes, Bravi "certainly did not testify that the craigslist.org posting indicated that a Cervelo P2C was for sale and that respondent was the seller." The fact that Bravi observed a craigslist posting for a Cervelo P2C bicycle with photographs of newer model Cervelo bicycles and a phone number, fails to establish, whether by inference or deduction, that anyone obtained control over Waterstraat's bicycle with the intent to permanently deprive her of it by selling it on craigslist. See *People v. Murray,* 262 Ill. App. 3d 1056, 1063 (1994).

¶ 82     Because judicial error results in an exclusion of the testimony of both Bravi and Detective Castaneda, the evidence that remains is circumstantial at best and not sufficient to support a finding of delinquency. I would, like my colleagues in *Hernandez*, 2012 IL App (1st) 092841, ¶ 18, find that although respondent's argument "may be characterized broadly as concerning the sufficiency of evidence her argument on this point has two facets." (Internal quotation marks omitted.)   Here, respondent's harmless error argument has two facets: the error was not harmless

and without the erroneous reliance on inadmitted evidence the remaining evidence was insufficient to prove guilt beyond a reasonable doubt.

¶ 83    Respondent is clear that he does not challenge the trial court's hearsay ruling.  Put another way, respondent agrees that the trial court properly limited the purpose for which certain testimony was admitted.  What respondent takes issue with is the trial court's express reliance on such testimony to support an inference that "further reinforces" the State's evidence of his culpable mental state, the arguable absence of which clearly speaks to the sufficiency of the evidence to sustain the conviction.

¶ 84    Finally, I agree with my colleagues in an earlier *Hernandez* case that we must "understand great deference should be given to trial judges when they hear the evidence and observe the witnesses.  See *People v. Furby,* 138 Ill. 2d 434, 455 (1990).  But this deference does not require a mindless rubber-stamp on every bench trial guilty verdict we address.  That would be an abdication of our constitutional responsibility.  And we [should] not [be] reluctant to examine the record for a lack of evidence linking the defendant to the crime charged." *People v. Hernandez*, 312 Ill. App. 3d 1032, 1037 (2000).

¶ 85    For the reasons stated, I would reverse outright respondent's theft conviction.